IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STONE RIVER LODGE, LLC; TAYCAN HOLDINGS LLC; T&S DEVELOPMENTS, LLC; BARBARA TOMCZAK; CHRISTOPHER FLOOD; ALAN GOLDFARB; TYLER TOMCZAK; BEATRIZ VALLE; FAYE DAVIS; and STEVEN DAVIS, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | Case No. 20 C 3590 |
| VILLAGE OF NORTH UTICA; DAVID STEWART; and RODNEY DAMRON, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

     Stone River Lodge, LLC and the nine other plaintiffs in this case all own vacation villas and cabins in the Village of North Utica, which is near Starved Rock State Park. They contend that ordinances adopted by the Village inappropriately restrict their right to rent their property to others and violate their federal constitutional rights in various ways. They have sued to enjoin enforcement of the ordinances and for damages. The defendants—the Village, its president, and its chief of police—have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to a claim. In considering the defendants' motion, the Court takes the complaint's factual allegations as true and draws reasonable inferences in the plaintiffs' favor. *See, e.g., O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018).

**Facts**

In 2004, Grand Bear Lodge, LLC purchased land near North Utica to develop a hotel. North Utica annexed the land. According to the plaintiff, the annexation agreements between the village and the property owner granted special use zoning classification for the development of a hotel and a number of buildings that each would include multiple vacation villas. The villas were to be individually owned. The village ordinances approving the annexation agreements incorporated "declarations of covenants." The covenants provided, among other things, that no owner would be prohibited from renting his or her unit and that this right (among others) would run with the land and would inure to subsequent owners.

The plaintiffs allege that until 2020, they were able to rent out their units on their own, "without any mandates from the Village." Compl. ¶ 41. In February 2020, however, the village adopted an ordinance regulating short term rentals of villas. The plaintiffs contend that the ordinance barred villa owners from renting out their units unless the owner agreed to rent the unit through the Grand Bear Lodge hotel. This, the plaintiffs allege, resulted from the insistence of the hotel's new owner that it could not operate profitably unless the owners of the villas participated in a "rental pool" through which the villas would be rented through the hotel.

The plaintiffs have attached a copy of the ordinance, Ordinance No. 2020-1, to their complaint. *See* Compl., Ex. 10. On its face, the ordinance is not targeted at the plaintiffs' villas. Rather, it makes it unlawful for anyone in the village to operate a "vacation rental unit" without a current, valid license from the village. The term "vacation rental unit" is defined as a dwelling unit or portion thereof offered for rent for a

2

period of less than thirty days, not including hotels, motels, lodging houses, boarding houses, or bed-and-breakfast establishments that are licensed under other provisions of the North Utica Village Code. The ordinance also establishes standards and procedures for application and issuance of licenses.

The plaintiffs allege, however, that they have not been allowed to obtain licenses for rental of their villas. They attach to the complaint a March 30, 2020 letter from the village clerk to a villa owner stating that the village

> provides for only one Hotel License issued to Grand Bear Lodge & Resort P.U.D., and per Village Ordinance 2020-01, private rentals of the Villas and Cabins located throughout the P.U.D. are not Licensed nor permitted. . . . Property owners that would like to rent out their property for overnight and short-term rental accommodations are required to utilize the rental pool provided directly by Grand Bear Lodge & Resort.

Compl., Ex. 12.

According to the complaint, the village's chief of police issued two citations for violation of the ordinance in early March 2020. *Id.* ¶ 76. The plaintiffs also allege that on two occasions before the filing of the present suit in June 2020—the dates are not stated—the chief of police "approached an Owner's Unit, rang the bell and stated 'I'm just curious if you're renting this for the weekend' or words to that effect." *Id.* ¶ 77. Later, citations seeking $750 fines were issued to villa owners for days on which neither the chief of police or other village employees visited the units cited. *Id.* In addition, the plaintiffs allege, during the first few weekends of June 2020, the owner of the hotel set up barriers that prevented the plaintiffs from freely entering and exiting their property.

The plaintiffs include twelve claims in their complaint. Count 1 is a claim under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment's Equal Protection Clause. Count 2 is a claim under section 1983 for violation of the Fourteenth Amendment's Due

Process Clause. Count 4 is a claim under section 1983 for violation of the Fourth Amendment. Count 6 is a claim for violation of the Sherman Antitrust Act. Count 11 is a claim seeking a declaratory judgment based on the just-mentioned federal constitutional provisions, as well as parallel state constitutional provisions. The remaining claims are state-law claims. Count 3 is a claim for violation of the Illinois Constitution's equal protection and due process provisions. Count 6 is based on the Illinois Antitrust Act. Counts 8, 9, and 10 are claims of equitable estoppel, promissory estoppel, and for specific performance. And count 12 is a claim for mandamus seeking a declaration that the village ordinance is void.

The defendants have moved to dismiss all of the plaintiffs' claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## Discussion

To overcome a motion to dismiss under Rule 12(b)(6) motion, a plaintiff must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]ell-pleaded facts" are accepted "as true and [the Court] draw[s] all reasonable inferences in the [plaintiffs'] favor." *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1060–61 (7th Cir. 2020). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In this decision, the Court will focus on the plaintiffs' federal claims.

**1.    Federal due process claim**

The Court begins with count 2, the plaintiffs' claim for violation of the Fourteenth

Amendment's Due Process Clause. The plaintiffs allege that the adoption of the ordinance impaired their ability to rent their villas and thus violated their due process rights. *See* Compl. ¶ 111. They also allege that the ordinance impairs the value of their property and that it does not promote the health, safety, or welfare of the public. *See id.* ¶ 113. The plaintiffs also contend that the ordinance allows the village to suspend or revoke a license without adequate procedural protections, *see* Compl. ¶ 112, but because there is no allegation in the complaint that any of the plaintiffs have been given a license, let alone had one revoked or suspended, they have suffered no injury from this aspect of the ordinance.

It is not entirely clear whether the plaintiffs are asserting a procedural due process claim or a substantive due process claim regarding the ordinance, so the Court will deal with both possibilities. To state a claim for a violation of procedural due process, a plaintiff must plausibly allege that it was deprived by the government of a liberty or property interest and that there were "insufficient procedural protections surrounding that deprivation." *See, e.g., Cannici v. Village of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018) (internal quotation marks omitted).

The Court assumes for purposes of discussion that the covenants, via the annexation ordinance, establish a legitimate claim by the plaintiffs of entitlement to rent out their property and that this is a property right protected by the Due Process Clause. This, the Court notes, is far from clear. Nothing in the covenants entitled the plaintiffs to be forever free from regulation. Indeed, the annexation agreements specifically provided that the village retained the right to enact zoning changes. And the ordinance in question almost certainly qualifies as a zoning change within the meaning of the

5

annexation agreements, even if it does not include the term "zoning" in its title or text.

That aside, there is no violation of procedural due process arising from the village's adoption of the ordinance. The adoption of the ordinance was a legislative act of general applicability, not a judicial or quasi-judicial act. It has been clear for over a century that in such situations, "the legislative determination provides all the process that is due." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) (citing *Bi-Metallic Inv. Co. of State Bd. of Equalization*, 239 U.S. 441, 445-46 (1915)). This is so, as *Bi-Metallic* makes clear, even if the legislative enactment impacts an individual's property rights. As the Supreme Court stated in that case:

> When a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without given them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.

*Bi-Metallic*, 239 U.S. at 445.

In their brief in opposition—though not in their complaint—the plaintiffs also appear to contend that their procedural due process rights were violated in connection with their applications for licenses because they "were denied outright and they were told that the only way they could rent is through the rental pool agreement." Resp. to Mot. to Dismiss. at 12. There is no violation of procedural due process here. The process due in a zoning case—and the licensing requirement is, or is closely akin to a zoning regulation—"is minimal and normally must be pursued in state courts." *Muscarello v. Ogle Cty. Bd. of Comm'rs*, 610 F.3d 416, 423 (7th Cir. 2010). Plaintiffs do

6

not contend, nor could they, that they lack a state-court remedy for any denial of a rental license.

To state a substantive due process claim, the plaintiffs must plausibly allege that the ordinance is not rationally related to a legitimate governmental interest or is arbitrary. *See, e.g., Lee v. City of Chicago*, 330 F.3d 456, 461 (7th Cir. 2003); *see generally County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The plaintiffs' argument regarding this claim includes no citation of authority and is so cursory that, in the Court's view, it has been forfeited. *See, e.g., Oneida Nation v. Village of Hobart*, 968 F.3d 664, 689 (7th Cir. 2020).

Even if this were not the case, there is nothing arbitrary about an ordinance that regulates short-term rentals of property—in this case, to require a license. *See, e.g., Nguyen v. City of Buena Park*, No. 8:20-cv-00348, 2020 WL 5991616, at *6 (C.D. Cal. Aug. 18, 2020). When an economic or business regulation is at issue, a court's review involves determining whether there is a rational basis for the regulation. *See, e.g., Minerva Dairy, Inc. v. Harsdorf*, 905 F.3d 1047, 1053 (7th Cir. 2018). This does not require a detailed factual inquiry but only the finding of "a reasonably conceivable state of facts that could provide a rational basis" for the regulation. *Id.* (internal quotation marks omitted). In this case, the ordinance itself includes a legitimate state interest for its adoption: it says the village adopted the regulation based on the belief that "vacation rental units possess certain specific concerns that can cause negative impact on surrounding properties and the Village as a whole, such as life-safety concerns, quality of neighborhood and related life concerns, security concerns, fire safety concerns, and tax revenue concerns." Compl., Ex. 10, Ord. No. 2020-01, preamble. And the terms of

the ordinance are rationally related to this interest. The ordinance imposes a licensing requirement; prohibits rental for less than a 24-hour period; bars service of food or beverages to guests; requires the availability of off-street parking; sets an occupancy limit for any given unit; and requires posting of applicable rules and regulations (including noise, trash disposal, and the like).

In short, the ordinance represents a legitimate exercise of the village's police power, and it is readily apparent that its requirements are rationally related to the village's stated interest. For these reasons, the plaintiffs have no viable substantive due process claim under the U.S. Constitution regarding the village's adoption of the ordinance. The plaintiffs' complaints regarding the manner in which licenses have been issued or denied sounds in equal protection, not due process, and will be addressed later in this decision.

**2.      Fourth Amendment claim**

In count 4 of their complaint, the plaintiffs challenge the village ordinance's provision stating that every vacation rental unit "shall be subject to inspection" by the village's police department, zoning enforcement officer, and fire protection district, as well as the LaSalle County Health Department. The ordinance also requires vacation rental unit operators to maintain a register of guests and to make this "freely accessible" to the village. The plaintiffs contend that these provisions run afoul of the Fourth Amendment because they do not require probable cause or reasonable suspicion prior to an inspection.

The Court agrees with the defendants that the plaintiffs' allegations are insufficient to establish their standing to challenge these provisions. Standing requires

an actual, concrete injury, traceable to the defendant, that would be redressed by a favorable outcome in the lawsuit. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An allegation of a possible future injury is insufficient. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The complaint does not allege that the village has conducted any actual inspection of a short-term rental unit without a warrant or has demanded production of any rental logs. And the Court is unwilling to assume, in a vacuum, that village authorities would enter a dwelling without a warrant or other legal process. Under the circumstances, the plaintiffs have experienced no actual or concrete injury from these provisions of the ordinance, and thus they lack standing to challenge them at this point.

Though the plaintiffs offer no real argument to the contrary in their response to the motion to dismiss—they simply state, in conclusory fashion and without support, that they have been injured, *see* Pls.' Resp. to Mot. to Dismiss at 17-18—their complaint does identify one point that merits discussion. Specifically, they allege that the police chief has come to the front door of villa units on two occasions to make inquiry. *See* Compl. ¶ 77. Assuming this is so, this activity does not run afoul of the Fourth Amendment. Under *Florida v. Jardines*, 569 U.S. 1 (2013), the area immediately surrounding and associated with a home—the "curtilage"—is considered part of the home itself for Fourth Amendment purposes. *Id.* at 7. A government official's uninvited physical intrusion into the curtilage may therefore implicate the Fourth Amendment. But the Court concluded in *Jardines* that there is an "implicit license" that "permits [a] visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Id.* at 8. "Thus, a police officer not

armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen might do." *Id.* (internal quotation marks omitted). This is all the plaintiffs have alleged in their complaint: they contend that the police chief came to the front doors of one or more villas, knocked, and asked a few questions. There is no allegation in the complaint that the chief or any other village employee stayed within the curtilage of the property of any of the plaintiffs any longer than a brief period, and no allegation that they made an entry into any dwelling.

For these reasons, the Court dismisses count 4 of the plaintiffs' complaint.

### 3. Federal equal protection claim

Count 1, the plaintiffs' Equal Protection Clause claim, appears to the Court to involve the short-term rental ordinance both on its face and as applied. On the face of the ordinance, there is no viable equal protection issue: it treats all short-term renters the same way. There is nothing in the ordinance itself that appears to treat the plaintiff villa owners differently.[1] And there is no plausible equal protection violation in "singling out" short-term rentals for licensing requirements. Specifically, the regulations imposed by the ordinance upon owners of short-term rental property unquestionably are rationally related to a legitimate state interest, as discussed in the Due Process Clause section of this decision. That is all the Equal Protection Clause requires when it comes to regulation of economic activity. *See City of Cleburne v. Cleburne Living Ctr.*, 473

---

[1] In particular, there is nothing in the ordinance that appears to provide additional or different requirements for short-term rentals by property owners in a "planned unit development," a term used by the defendants in their briefs on the motion to dismiss. If some term of the ordinance provides such an exception in a way that is not readily apparent from the face of the ordinance, one would have expected the parties to explain this—and they did not.

U.S. 432, 440 (1985); *Smith v. City of Chicago*, 457 F.3d 643, 650-51 (7th Cir. 2006).

The plaintiffs also allege that they have been singled out for less-favorable treatment with regard to the actual issuance of short-term rental licenses. It appears that this claim is not based on the terms of the ordinance itself; rather, the claim is based on how licensing for short-term rentals has been carried out in practice. The plaintiffs say that they, as villa owners, have been precluded from obtaining licenses unless they agree to join a "rental pool" administered by the Grand Bear Lodge. *See* Compl., Exs. 12, 13. In other words, the plaintiffs say they are being treated differently from others in the village who may wish to rent out their property on a short-term basis.

As the Court has indicated, it does not appear that there is anything in Ordinance 2020-1 that establishes such a distinction. The plaintiffs contend that this state of affairs resulted from pressure (for want of a better word) by the hotel owners, who may have believed their revenues were being hurt by villa owners renting out their property. The defendants seem to say that the differential treatment is justified by the fact that the villas are in a "planned unit development," but this explanation and what it means in determining the existence of a rational basis is not found in the complaint (or, for that matter, elsewhere in the record relating to the motion to dismiss) and thus is not appropriately considered on a Rule 12(b)(6) motion.

Based on the extremely thin record, the Court cannot say as a matter of law at this juncture that this claimed differential treatment is rationally related to a legitimate state interest. This claim—which the Court will refer to as the plaintiffs' as-applied equal protection claim—survives defendants' motion to dismiss, though the plaintiffs' equal protection claim based on the face of the ordinance does not.

11

**4.      Federal antitrust claim**

The plaintiffs' claim under the Sherman Act lacks merit, as the defendants argue. The Sherman Act does not apply to allegedly anticompetitive restraints imposed by a state "as an act of government," *Parker v. Brown*, 317 U.S. 341, 352 (1943), and this same immunity extends to actions by local governments like the village when they are acting pursuant to authority conferred by a state. *See City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 371-72 (1991). A local governmental entity like the village is authorized by Illinois law to impose zoning and land use restrictions as appropriate for public health, safety, and welfare. *See* 65 ILCS 5/11-13-1. And such provisions necessarily "displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition." *Omni Outdoor Advertising*, 499 U.S. at 373. The defendants are therefore entitled to *Parker* immunity on the plaintiffs' Sherman Act claim. Contrary to the plaintiffs' contention, the application of *Parker* immunity is a legal issue, not a factual issue.

**5.      State-law claims**

The plaintiffs have also asserted a variety of state-law claims, most if not all of which turn on the specifics of the annexation agreements and related documents or on the interpretation of state statutes. The Court is inclined to decline the exercise of supplemental jurisdiction over these claims and to require the parties to litigate them in state court, particularly given the dismissal of virtually all of the plaintiffs' federal claims. *See* 28 U.S.C. § 1367(c). The Court will address this point with the parties at the upcoming status hearing.

**Conclusion**

For the reasons stated above, the Court grants defendants' motion to dismiss in part [dkt. no. 19]. The Court dismisses count 1 in part (except for what the Court has called the plaintiffs' as-applied equal protection claim) and counts 2, 4, and 6 in their entirety for failure to state a claim upon which relief may be granted. The motion to dismiss is entered and continued as to the plaintiffs' remaining claims. The parties should be prepared to discuss at the upcoming status hearing whether the Court should continue to exercise supplemental jurisdiction over the plaintiffs' state-law claims.

Date: November 15, 2020

_____
MATTHEW F. KENNELLY
United States District Judge